ORIENT INSURANCE COMPANY, APPELLANT, V. SALVADOR HAYES ET AL., APPELLEES.

FILED JANUARY 23, 1901.   No. 9,305.

1. **Finding of Fact: REVIEW.**  A finding of fact based on fairly conflicting testimony will not be disturbed on review unless manifestly wrong.

2. **Collection: AUTHORITY OF ATTORNEY: POSSESSION OF NOTE AND MORTGAGE.**  An attorney may have authority to collect for his principal a note and mortgage without having the same in his possession.

3. **Evidence.**  Evidence examined, and *held* to sustain the finding of the trial court.

APPEAL from the district court for Franklin county. Heard below before BEALL, J.   *Affirmed*.

*C. C. Flansburg*, for appellant.

*J. P. A. Black, F. I. Foss* and *H. Whitmore, contra*.

NORVAL, C. J.

On March 1, 1890, Salvador Hayes and Mary J. Hayes, his wife, borrowed of the Loan & Guarantee Company

of Hartford, Connecticut (hereinafter called the guarantee company), the sum of $1,300 and secured the payment thereof by a mortgage on real estate in Franklin county. F. I. Foss, of Crete, Nebr., negotiated the loan for the lender. The loan was evidenced by a note of $1,300, dated March 1, 1890, due March 1, 1895, with interest at 7 per cent per annum, payable semi-annually. Coupons for the interest were attached to the note. To secure the said debt which said note evidenced, the real estate of the said Salvador Hayes and Mary J. Hayes was mortgaged. Said note was made payable at the office of the guarantee company. The mortgage, after acknowledgment, was filed and recorded on March 6, 1890. On April 16, 1890, the Orient Insurance Company (hereinafter called the insurance company), appellant herein, claims to have purchased the said note of the guarantee company, paying therefor the full face of said note and accrued interest, amounting to $11.38; and that it was thereupon duly indorsed by the guarantee company, without recourse, delivered to the insurance company, and that it remained in the possession of the latter until June 8, 1895, when, not having been paid, it was sent out for collection. After the alleged transfer of said note to the insurance company, and on or about November 21, 1892, said Foss, assuming to act for the guarantee company, filed a petition in the district court of Franklin county against the mortgagors, praying foreclosure of the said mortgage, which suit was brought in the name of the guarantee company, as plaintiff. On February 28, 1893, a decree of foreclosure was entered therein, the court finding that by agreement of parties there was due the guarantee company the sum of $1,630, and that there was due to Charles C. White, as receiver of Dawes & Foss, the sum of $145, which was a second lien; and then followed the usual order of sale for the amount found due, if not paid on a specified date. Before the order of sale issued, and on December 12, 1893, the appellee, Elvira J. Sipes, together with her husband, Robert J.

Sipes, now deceased, purchased the mortgaged premises of Salvador Hayes and Mary J. Hayes; and on or about March 5, 1894, the said Robert J. Sipes, for and on behalf of himself and wife, paid to the clerk of the district court of Franklin county, $1,968.85, and the clerk of said court duly receipted to him therefor, and afterwards, on March 26, 1894, the clerk executed a satisfaction certificate to Sipes, and delivered the same to the county clerk of Franklin county, and on the same day the said satisfaction certificate was duly recorded. The note and mortgage were, on June 8, 1895, forwarded to C. C. Flansburg, an attorney at Lincoln, Nebraska, for collection, and on November 9, 1895, a petition was duly filed in the office of the clerk of the district court of Franklin county, praying for a foreclosure of said mortgage. The defendants, Salvador Hayes and Mary J. Hayes, filed their answer, admitting the execution of the note and mortgage and pleading the payment thereof as hereinbefore stated; that the guarantee company was the agent of the insurance company, and as such foreclosed the mortgage in the district court of Franklin county in 1893, in its own name; that F. I. Foss was the general agent of the guarantee company, its vice-president and general attorney, and as such agent and attorney was fully authorized to collect, by law, any and all moneys due from any and all parties in the state of Nebraska; that it was the custom and usage of said guarantee company to appoint agents to do its business, and said Foss was the agent and attorney for that purpose; that if the plaintiff actually owned the note and mortgage, it was careless and negligent in not recording an assignment of it in Franklin county, and in not notifying the defendants, the mortgagors, that the plaintiff had treated the guarantee company as its agent, in the collection of interest and principal, in other cases, as well as in this, and plaintiff had thereby held out to the world, or allowed the guarantee company to do so, to every person doing business with it, that the said loan and guarantee company were

the owners of the mortgage and that, therefore, it is estopped from claiming any right to said note. Elvira G. Sipes filed a separate answer, alleging substantially the same facts, in addition thereto the purchase of the premises, by Robert J. Sipes and herself, subject, however, to the decree of foreclosure then entered; and the decease of Robert J. Sipes. Plaintiff filed its reply, and at the December, 1896, term of said court a decree was entered finding in favor of all the defendants and against the plaintiff, and that the note and mortgage together set forth in the plaintiff's petition were duly foreclosed at a prior term of said court, and then proceeded to dismiss the case and cancel and discharge the lien of the mortgage. From this decree plaintiff appeals.

Counsel for the insurance company, in his brief, concedes the necessity of establishing that it was the owner of the note and mortgage for value before maturity, since if such fact is not disclosed by the evidence, or if there is sufficient evidence to support the lower court in holding that it was not such holder, the decree must be affirmed. The facts concerning Foss's right to represent and to act for the loan company are so nearly identical with those brought out in the case of *Root v. Fast*, reported in 58 Nebr., 498, as to make it unnecessary to review the evidence concerning his relations to that concern. We shall content ourselves with merely stating that the evidence is overwhelmingly conclusive that he was the agent and attorney of the loan company, and was clearly acting within the limits of his authority in foreclosing the mortgage upon default in payment of interest, and also in collecting the judgment and receipting the docket. It remains, therefore, to examine the record relative to the question of whether the insurance company was a holder of the note and mortgage for value before maturity. The evidence of two witnesses is practically relied upon by it to establish such fact. One is Charles B. Whiting, president of the insurance company, the other F. E. Johnson, president of the loan company, whose

depositions plaintiff introduced. The direct testimony of these two sustains the contention that said insurance company was such owner and holder of the note and mortgage, but the surrounding circumstances and the evidence of the two persons named on cross-examination justified the lower court, in our opinion, in holding the contrary. As a circumstance, we might cite that, on cross-examination, Whiting was asked why he did not have the assignment of the mortgage from the loan company recorded in Franklin county, and among his reasons for not so doing he states: "As we considered the mortgage companies good we did not think it was necessary to send them out and have them recorded." Now, as a matter of fact, the note was indorsed by the loan company without recourse. Further, he testifies that the company kept this note in its safe for five years after it purchased it, without having received a dollar of the principal, and less than sufficient money to pay the first installment of interest, yet never notified the maker of such delinquency, or attempted in any way to collect the same, or to ascertain its condition. Further, it appears from the evidence that many of the directors of the insurance company are also directors of the loan company, evidence which tends to show a very close connection between the two corporations. Now, all of these are circumstances which go far to militate against the truth of the direct testimony of Whiting relative to the purchase by his company of this note and mortgage. A still more convincing circumstance is connected with F. E. Johnson, the president of the loan company, who substantiates Whiting's testimony, that the note and mortgage were transferred to the insurance company, for value, in April, 1890. Yet five years after this occurrence (and it should be remembered that the note was indorsed without recourse) Johnson sends to the mortgagor the following communication:

16

"The Loan & Guarantee Company of Connecticut.

"Hartford, Conn., Jan. 23d, 1895.

"Dear Sir: Please note below a memorandum, showing the condition of a loan made to Salvador Hayes, dated March 1st, 1890, principal due March 1st, 1895 with interest payments due March 1st and September 1st in each year, and past due interest payments since March 1st, 1890, as shown on our register. That we may be assured of its accuracy, will you examine the same, and if found correct, sign your name at the foot of this page and mail the memorandum below to us in the enclosed envelope.

"If any error appears in our statement, please note it on the bottom of the memorandum.

"Each and every of the above payments are due and payable to the Loan & Guarantee Company at its office in Hartford, Connecticut on the respective days mentioned, and should be therefore sent to us and to no one else at least five days before due. All remittances should be by bank draft on New York or post office order.

"Please notify us promptly of any changes of ownership or of postoffice.

"Frank E. Johnson, *President.*"

Now, if Johnson truthfully testified when he stated that the note and mortgage in question had been sold and transferred, without recourse, to the insurance company nearly five years prior to the date of this communication, why did he notify the maker that each of these payments therein mentioned are due and payable to the loan company, and should be sent to it and to no one else? Indeed, the evidence shows conclusively that, from the time of the first default in the interest, the loan company was the only one which took any interest in the condition of this loan, up to June, 1895, when it appears the papers were sent by the insurance company to its attorney for foreclosure. If the loan company had parted with the title to the same, without having incurred any liability as indorser, why should he be exer-

cised as to the condition of the same? And, on the other hand, if the insurance company was a *bona fide* holder thereof, why should it sit supinely down for five years after a default in interest occurred, and make absolutely no effort to collect it, or even so much as to ascertain its condition? Surely, evidence of the character indicated amply justified the finding that the insurance company was not the holder of the note for value before maturity, but that, as a matter of fact, it was being used as a cover behind which to collect this note and mortgage twice.

It is further urged that the fact that Foss, at the time he foreclosed the mortgage, had neither it nor the note in his possession, and that neither of them was surrendered to be cancelled, precludes the defendant from setting up the payment of the decree as a payment of the note. Doubtless it is a circumstance militating against the claim of defendant, but it is not conclusive. And we are persuaded the evidence justified the court in finding that Foss had authority to sue and collect this note and mortgage, whether the same was in his possession or not.

The decree is accordingly

AFFIRMED.